FILED IN CHAMBERS
U.S.D.C. Rome

APR 3 0 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

TILLOTSON COPORATION, d/b/a
BEST MANUFACTURING COMPANY,

        Plaintiff,

    v.

SHIJIAZHAUNG HONGRAY PLASTIC
PRODUCTS, LTD.; GLOVECO, INC.;
SAS SAFETY CORP.; PERMATEX,
INC.; AMERCARE, INC.; ISLAND
DENTAL CO., INC.; AND DARBY
GROUP COMPANIES, INC.,

        Defendants and
        Third-Party
        Plaintiffs,

ANSELL HEALTHCARE PRODUCTS
LLC, CARDINAL HEALTH 200,
INC., MYDENT INTERNATIONAL
CORP., KNK MEDICAL DENTAL
SPECIALTIES, LTD., and
SUPERMAX INCORPORATED CORP.,

        Third-Party
        Defendants.

CIVIL ACTION

NO. 4:05-CV-0118-RLV

O R D E R

    This is an action for patent infringement.  Pending before the
court are Island Dental Co. and Darby Group Co.'s ("the
defendants") Motion for Stay [Doc. No. 203], Motion to Exclude
Plaintiff's First Supplemental Infringement Contentions [Doc. No.
205], and Motion to Compel [Doc. No. 207].  Also pending is a
Motion for Leave to File Third Amended Complaint [Doc. No. 215] by

the plaintiff, Tillotson Corporation, as well as a Motion for Joinder in the Defendants' Motion for Stay [Doc. No. 210] by third-party defendant Ansell Healthcare Products, LLC.

## MOTION TO STAY

Currently, there is a related action pending in the United States District Court for the District of Delaware ("the Delaware action"). That suit, filed subsequent to this case ("the Georgia action"), is a declaratory judgment claim filed by one of the third-party defendants in this matter, Ansell Healthcare Products ("Ansell"), against the plaintiff, Tillotson. The Delaware action and the Georgia action are based on the same patent, U.S. Patent No. Re 35,616 ("the '616 patent"). The Delaware action concerns just one type of allegedly infringing glove, whereas the Georgia action concerns not only the same glove at issue in the Delaware action but also other types of gloves from different manufacturers. The defendants move to stay this case pending resolution of the Delaware action. At issue is whether this court should stay the first-filed Georgia action in favor of the later-filed Delaware action.

Nearly a year after Tillotson filed this suit against Island Dental and Darby (as well as other co-defendants who have since settled with the plaintiff) for patent infringement, the defendants

2

filed an action for indemnity against five third-party defendants, one of which was Ansell.  Approximately one month after being sued as a third-party defendant in this case, Ansell filed the Delaware action seeking an injunction against Tillotson and a declaratory judgment that the '616 patent is invalid and that Ansell's product in the Georgia action has not infringed the patent.

Faced with litigating its own claims of patent infringement against the defendants in this Georgia action as well as the declaratory judgment suit by Ansell in the Delaware action, Tillotson moved the Delaware court to transfer that case to this court.  However, the Delaware court denied Tillotson's motion, leaving the action between Ansell and Tillotson pending in that forum while the previously-filed infringement action between the defendants and Tillotson remained in this court.  At that point, the defendants filed their motion to stay this case until the Delaware action is resolved and Ansell's liability with respect to the '616 patent is determined.  Thus, the issue in the pending motion is whether this court should stay the Georgia action even though it was filed before the Delaware action.

The defendants assert that it is appropriate to stay this case pursuant to the "customer suit exception" to the "first-filed rule."  The "first-filed rule" is a general rule that gives a

preference to the first-filed suit when there are similar cases filed in one or more courts. Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993). Accordingly, as the first-filed case, the Georgia action should have priority. However, the "customer suit exception" to that general rule may be applied to give preference to the second suit when it is an action against the allegedly infringing product's manufacturer and the first suit is merely an action against that manufacturer's customer. Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989). The defendants argue that because they were merely the customer who purchased and then re-sold Ansell's allegedly infringing gloves, the "customer suit exception" should apply and the first-filed Georgia action against them should be stayed. However, determining whether to apply the exception is not mechanical; "[t]here must . . . be sound reason that would make it unjust or inefficient to continue the first-filed action." Genentech, 998 F.2d at 938. Consequently, this court uses its discretion to determine the most judicious disposition of this case within a framework of broad equitable principles. Am. Household Prods., Inc. v. Evans Mfg., Inc., 139 F. Supp. 2d 1235, 1240 (M.D. Fla. 2001).

The primary rationale behind the "customer suit exception" is the presumed greater interest of a manufacturer in defending

infringement claims based on its products.   Katz v. Lear Siegler,
Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990).   This rationale arises
out of the assumption that even if a manufacturer is not sued
directly, it would nevertheless have to protect its customers from
any liability as a result of one of its products.   Id.
Accordingly, the "customer suit exception" creates the rare
occasion to forego the general preference for the first-filed case
when the manufacturer's interest in adjudicating an infringement
claim is greater than its customer's interest.   Yet, determining
whether the Delaware action fits squarely within the purpose of the
"customer suit exception" requires much more than simply labeling
the two parties as either a "manufacturer" or "customer," and
giving preference to the manufacturer suit.

      The plaintiff asserts that the "customer suit exception"
should not apply because Ansell is actually a "supplier," and not
a "manufacturer," of the type of glove at issue in both the Georgia
and Delaware actions.   For its part, Ansell asserts that although
it does not manufacture the gloves, the "customer suit exception"
nevertheless applies equally to suppliers as well as manufacturers.
In support, Ansell cites Corning Glass Works v. United States, 204
U.S.P.Q. 436 (Ct. Cl. 1979), and Rhode Gear U.S.A. v. Frank's Spoke
N. Wheel, Inc., 225 U.S.P.Q. 1256, 1259 (D. Mass. Feb. 14, 1985),

for the proposition that the "customer suit exception" shifts the priority as between two actions to a later-filed suit even when it involves a supplier because that supplier is in the same position as a manufacturer and has the same greater interest in adjudicating the infringement claim.

However, the cases cited by Ansell, and other cases, make clear that the label of "supplier" is not automatically interchangeable with that of "manufacturer." Instead, a later-filed action can be given preference only when a court determines that it involves a party who has a greater interest than the "customer" in the first-filed action, much like the greater interest of a "manufacturer." See Katz, 909 F.2d at 1464. Thus, it is necessary to determine whether Ansell's interest in the later-filed action, regardless of whether it is a supplier, rises to the level of a manufacturer in accordance with the rationale for the "customer suit exception."

In Corning Glass Works, the plaintiff filed related patent infringement actions: first, it filed a suit in the Court of Claims against the government for purchasing and using certain optical devices developed by Corning, and second it filed a suit in the United States District Court for the District of Virginia against International Telephone and Telegraph ("ITT") for manufacturing

6

those optical devices.  On the government's motion, the trial judge in the Court of Claims action stayed that case pending resolution of the later-filed district court case.  On appeal, the Court of Claims upheld that decision stating, "Courts generally favor suits against the supplier, as primary defendant, over suits against that supplier's customers, even where the customer's suit is filed first."  Corning Glass Works, 204 U.S.P.Q. 436.  The court reasoned that ITT, as the manufacturer, had "the greater incentive to defend the case vigorously" because with respect to the two related cases in that instance, both involved the same patents and same issues of validity and infringement.  As a result, the manufacturer had the greater interest since a ruling in the district court against the manufacturer would foreclose the issue of the customer's liability in the related case.  Thus, that court's reasoning focused on which case involved the party with the greater interest to defend.

Applying the "customer suit exception" in Rhode Gear also turned on whether a party's interest in the later-filed suit was as great as that of a manufacturer.  In that case, the plaintiff had filed infringement claims in the United States District Court for the District of Massachusetts against Frank's Spoke N. Wheel, Inc. ("Frank's") regarding an automatic release bicycle holder. Subsequently, Frank's supplier of that bicycle part, Raleigh Cycle

Company of America, filed a declaratory judgment action in the United States District Court for the Southern District of Ohio against Rhode Gear, to determine the validity and infringement of the patent. The defendant in the first-filed Massachusetts action, Frank's, then moved that court for a stay pending the results of the later-filed declaratory judgment action in Ohio involving its supplier, Raleigh. The court concluded that the earlier case against Frank's constituted a "customer" suit since Frank's had bought all of its supply of the allegedly offending bicycle parts from Raleigh. Rhode Gear, 225 U.S.P.Q. at 1258. The court then applied the "customer suit" exception and stayed the case against Frank's in preference for the later-filed case against Raleigh. In doing so, the court reasoned that because Raleigh was the sole source of the allegedly infringing parts in this country, Raleigh would be directly responsible for any infringement and, therefore, it had the same interest as a manufacturer in defending claims of infringement based on its product. Id. at 1259.

Thus, in both Corning Glass Works and Rhode Gear, the crux of the decision on whether to apply the "customer suit exception" was whether the interests of the party in the later-filed action were as great as that of a manufacturer. In this case, Ansell is admittedly not the manufacturer of the allegedly infringing gloves

bought by the defendants.   The question then is whether Ansell's interests are as great as a manufacturer in relation to the defendants' interest.   This court concludes that they are not.

Unlike the supplier in Rhode Gear, Ansell is not the sole supplier of the glove at issue in its case.   Rather, it is one of many suppliers of the allegedly infringing glove in the United States.   Additionally, Ansell supplied only one type of the many gloves at issue in the Georgia action, and it did so to only one of the defendants.   Island Dental did not purchase gloves from Ansell.   Consequently, this court seriously doubts that both defendants can properly be labeled as "customers" or that the Georgia action is truly a "customer suit."

Also unlike the supplier in Corning Glass Works or Rhode Gear, the later-filed suit here does not entirely involve the same issues of infringement as the first-filed suit such that resolution of the second case would foreclose the issue of liability in the first case.   At most, resolution of the Delaware action in favor of Ansell would merely serve to delay the instant case because the Delaware suit could determine only the liability of one of the defendants and it could do so only with respect to one of the many allegedly infringing products.

The supplier in <u>Corning Glass</u> was found to have the greater incentive to defend the case, i.e., the greater interest, because it actually manufactured the allegedly infringing product. The supplier in <u>Rhode Gear</u> actually stepped in to defend its customer in the first-filed action despite filing its own declaratory judgment action. However, Ansell did not actually manufacture the gloves at issue, and it has not stepped in to defend its customers in the Georgia action.[1]   Clearly, Ansell may be affected by the outcome of the Georgia action, but it is not the sole manufacturer of the gloves at issue in the Georgia action, and any resolution of the Delaware action does not necessarily foreclose the issues in the Georgia action.

Therefore, this court concludes that Ansell's interests in the Delaware action are not as great as those of a "manufacturer" with respect to the issues in the Georgia action, and, consequently, the

---

[1] The defendants and Ansell argue that any decision against Ansell in the Delaware action would force Ansell to pay damages and immunize Darby from Tillotson's claims of infringement in this suit. [Defs.' Mot. to Stay, Doc. No. 203-2, 13; Ansell's Joinder in Defs.' Mot. for Stay, Ex. C, Doc. No. 210-2, 57].   However, those arguments ring hollow.  Darby's third-party claim against Ansell in the Georgia action seeks to hold Ansell responsible for any infringement liability based on Ansell's products, but Ansell at the very least disputes the scope and timing of its responsibilities.   <u>See</u> [Ansell's Answer to Second Amended Third-Party Complaint, Doc. No. 166; Ansell's Motion to Dismiss Or, In The Alternative, For Summary Judgment, Doc. No. 175-1.]

preference for the manufacturer's forum is not applicable. Moreover, because resolution of the Delaware action would not resolve all of the issues present in the Georgia action, staying this case in favor of the Delaware action would simply delay the adjudication of the plaintiff's other rightful claims.  In essence, this court is being asked to stay the first-filed case because just one of the many third-party defendants has filed a declaratory judgment claim in Delaware with respect to just one of the many gloves at issue in the Georgia action.

The defendants argue that based on Katz, the application of the "customer suit exception" does not require that the later-filed suit resolve *all* of the claims in the first-filed suit.  Katz, 909 F.2d at 1464 ("Although there may be additional issues involving the defendants in the [customer suit], their prosecution will be advanced if the patent holder is successful on the major premises being litigated in [the manufacturer's action], and may well be mooted if he is unsuccessful.").  While that may be a true statement, it is nevertheless inapplicable here.  The issue being litigated in the Delaware action is whether the one type of glove distributed by Ansell to the defendants infringes the '616 patent. However, the prosecution of that one issue will not advance the many other issues present in the Georgia action.   The Georgia

action involves many different gloves distributed by the defendants, just one of which is the glove sold to them by Ansell.

Even if the Delaware court finds in favor of Ansell, that does not advance in any way the remaining claims against the defendants in the Georgia action. The defendants have distributed other types of allegedly infringing gloves, and any decision with respect to one of the types that they distributed will have no bearing on whether the other types also infringed. Additionally, if the Delaware court finds in favor of Ansell, that decision will not affect one of the defendants, Island Dental, or the claims of infringment based on the gloves that it distributed. A decision in Delaware will resolve only a claim based on one type of glove distributed by one of the defendants.

The defendants even tacitly admit that resolution of the Delaware action will not resolve all of the claims against Darby by Tillotson in the Georgia action, [Defs.' Mot. to Stay, Doc. No. 203-2, 14], not to mention the claims against the other defendant, Island Dental. Thus, staying the Georgia action in favor of the Delaware action will not substantially advance or resolve the many infringement claims based on the many different types of gloves at issue in this case. Accordingly, granting the defendants' motion to stay is not warranted.

Lastly, this court concludes that it is not "unjust or inefficient to continue the first-filed action." Genentech, 998 F.2d at 938. The plaintiff in this case is located here, and the defendants are properly parties to this action. Even if Ansell, as a third-party defendant, could not be sued by the plaintiff directly in this forum, that third-party indemnity suit has been stayed by this court pending resolution of the infringement claim. The only party apparently inconvenienced by maintaining this first-filed action is Ansell, yet nothing prevents it from adjudicating its declaratory judgment action here. While it may very well be more efficient for Ansell to pursue its claims in the Delaware court, it is unclear to this court how staying this case would be more efficient for the defendants, especially since the Delaware action concerns only one of the many gloves at issue here and only with respect to one of the two defendants. Therefore, this court concludes that the broad principles of equity weigh in favor of permitting this first-filed action to proceed uninterrupted.

## MOTION TO EXCLUDE SUPPLEMENTAL INFRINGEMENT CONTENTIONS

The plaintiff had timely disclosed its initial infringement contentions identifying three gloves distributed by Darby but, subsequently, supplemented its infringement contentions and added fourteen new gloves to its infringement claims. The defendants

13

move this court to exclude the supplemental infringement contentions [Defs.' Mot. to Exclude Pl.'s First Supplemental Infringement Contentions, Doc. No. 205].

The procedural history of this case is far from simple, and this court will not rehash every detail here. In relevant part, the plaintiff disclosed its initial infringement contentions on November 30, 2006, in accordance with the local rules and with the defendants' consent to an extension of the schedule of dates. [Joint Mot. to Extend Schedule of Dates, Doc. No. 178; November 28, 2006, Order, Doc. No. 182.] That disclosure triggered the defendants' duty to prepare a response, which was due on January 12, 2007. On January 19, the parties stipulated and agreed to extend the defendants' response due date until January 31, 2007 [Doc. No. 191]. One day before this second due-date passed, however, the plaintiffs served a supplemental disclosure of infringement claims. Before the defendants filed any response, they filed the instant motion to have that supplemental disclosure excluded, thus limiting the plaintiffs to their initial infringement claims.

The defendants assert that the filing of a supplemental infringement contention is not permitted by the local patent rules and, more importantly, violates the schedule of dates approved by

14

this court for the remaining proceedings in this case. Specifically, the defendants assert that Tillotson failed in its due diligence duties to specifically identify each claim of patent infringement alleged when the initial contentions were due, i.e., the plaintiffs failed to disclose *all* of its infringement contentions at one time and so may maintain only its claims included in the initial disclosure.

The plaintiff, in response, asserts that it was diligent in investigating the details of which glove products distributed by the defendants infringed the '616 patent. Specifically, the plaintiff argues that its initial disclosure relied on Darby's identification of the glove products it distributed. Then, in response to a request by the defendants on January 16, 2007, for more specific information regarding certain types of gloves included in the initial disclosure, the plaintiff further investigated the glove products it had included in the initial contentions. In so doing, the plaintiff discovered a new distributor of gloves for one of the defendants, Island Dental, on January 26, 2007. After inquiring into the full range of products distributed by this new entity, Sullivan-Shein, the plaintiff asserts that it found fourteen previously undisclosed gloves that infringe the '616 patent. Four days afterward, the plaintiff

supplemented its infringement contentions to include the newly discovered gloves.

According to the plaintiff, its conduct is permissible according to the Rules of Civil Procedure. Further, the plaintiff argues that it was diligent in investigating and discovering a previously unknown business association of one of the defendants, which apparently has distributed other types of allegedly infringing glove products.

While this court recognizes the importance of not unnecessarily delaying the "efficient resolution of patent disputes," Patent L.R. 1.2(a), compliance with established deadlines should not come at the expense of developing fully the record. The local patent rules clearly establish time requirements for disclosing infringement contentions. See Patent L.R. 4.4. However, the local patent rules also incorporate the Federal Rules of Civil Procedure and, accordingly, this court's discretion to allow the parties to amend their pleadings. See FED. R. CIV. P. 15, 26.

The sequence of events leading up to this dispute over whether the plaintiff may supplement its disclosure shows that two months passed from when the plaintiff timely disclosed its initial contentions until the time it served its supplemental disclosures.

In the intervening period, the defendants had not yet filed their response. Admittedly, the defendants' time for doing so expired on January 31, 2007, only one day after receiving notice of the supplemental disclosures, and so the defendants may not have had enough time to include in its initial response any discussion of the additional fourteen allegedly infringing gloves. However, the defendants did not even try. Rather, they did not file any response at all but instead, on February 20, 2007, filed an unopposed motion to further extend their deadline for serving their response until March 1, 2007 [Doc. No. 202]. Then, on the very next day, the defendants filed their pending motion to exclude the supplemental infringement claims altogether.

Significantly, this court does not view the defendants' actions as unwarranted, but they do undermine the defendants' arguments that addressing the supplemental disclosures will be detrimental to the efficient resolution of this case. Nevertheless, to establish proper grounds for allowing the supplemental infringement claims, the burden is on the plaintiff in this instance to show that it was diligent in amending its pleadings. See O2 Micro Int'l Ltd. v. Monolithic Power Sys., 467 F.3d 1355, 1367-68 (Fed. Cir. 2006).

17

While the plaintiff's eleventh hour investigation may have been undesirably late, this court concludes that it was sufficiently diligent to justify allowing the plaintiff to amend its disclosures.  Four days after it learned of the additional fourteen gloves, the plaintiff supplemented its disclosures.  That short amount of time is surely not detrimental to this case and, moreover, does not evidence any lack of due diligence on the part of the plaintiff.

Nevertheless, the court does not view the pending motion as an all-or-nothing proposition.  Rather, it is necessary for an efficient resolution of the case against the defendants to focus on the gloves that they distributed.  Consequently, this court does not view any supplemental infringement claim regarding gloves that Darby or Island Dental never distributed as meriting inclusion in this suit.

Therefore, in accordance with this court's reasoning, infra, with respect to the plaintiff's motion to file third amended complaint infra, the defendants' Motion to Exclude the Plaintiff's Supplemental Infringement Contentions is GRANTED in part and DENIED in part.  The plaintiff will be permitted to supplement its infringement contentions, but only with respect to gloves that have been distributed by the defendants, Darby and Island Dental.  If

neither defendant has distributed a "newly discovered" glove, that glove is not a proper subject in this case.

## MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

In a related motion, Tillotson moves this court for permission to file a third amended complaint to add Sullivan-Schein and Henry Schein, Inc. ("Sullivan-Schein") as defendants [Doc. No. 215-1]. The plaintiff seeks to add these parties on the basis that Sullivan-Schein now processes orders for gloves formerly distributed by Island Dental.

While investigating Island Dental's website, Tillotson apparently discovered that at least a portion of Island Dental, and in particular Island Dental's glove distributorship, had been acquired by Sullivan-Schein. In fact, when attempting to purchase a glove formerly distributed by Island Dental, the plaintiff was directed to the Sullivan-Schein website, which announced, "As of July 3rd, [2006,] all Island Dental web transactions will now be processed through the Sullivan-Schein website." [Pl.'s Mem. In Supp. of Mot. for Leave to File Third Am. Comp., Doc. No. 215-6, 4.] In further researching the matter, the plaintiff learned of a number of "new" gloves distributed by Sullivan-Schein in addition to the gloves originally distributed by Island Dental. Based on

this and other information, the plaintiff asserts that Sullivan-Schein and Henry Schein, Inc. should be added to the complaint.

The defendants assert that Sullivan-Schein's acquisition acquired only certain assets of the defendants, not their potential liability.   Nevertheless, while that may be true, this court concludes that justice requires granting leave to amend the complaint to add Sullian-Schein and Henry Schein.

Rule 15(a) of the Federal Rules of Civil Procedure requires a court to grant leave to amend a complaint when "justice so requires."   Only where there is undue delay, bad faith, or a dilatory motive on the part of the movant will leave be properly denied.   Nat'l Indep. Theatre Exhibitors, Inc. v. Charter Fin. Group Inc., 747 F.2d 1396, 1404 (11th Cir. 1984).   This court believes that the plaintiff's investigations into fully developing its allegations have arguably been slow to take place, but their actions have not been dilatory nor have they amounted to undue delay.

Although the plaintiff may have been able to learn of the transaction with Sullivan-Schein a few months before it actually did, it did so nonetheless before the defendants filed a response to the initial infringement contentions.   In Charter Financial, 747 F.2d at 1404, the plaintiffs requested leave to add fourteen new

20

parties nearly a year after discovery had begun and was about to conclude.  Such is not the case here.  Tillotson's request comes not far into discovery and well before it is to conclude. Discovery commenced on September 13, 2006, and this court has granted multiple extensions of time, requested by both parties, for relief from pending deadlines.  Additionally, before this court even entertains what are sure-to-be-filed subsequent motions to extend time, the first phase of discovery is not set to conclude until August 13, 2007, and the second phase is not scheduled to conclude until around December 3, 2007. The plaintiff's actions also do not evidence a dilatory motive.  Moreover, considering the fact that this matter is still in its early stages, and that the infringement contentions may be amended to include only the gloves that were at one point distributed by the defendants, adding Sullivan-Schein and Henry Schein, Inc. will not cause undue delay.

Lastly, Tillotson has alleged that at least some of the gloves distributed by Sullivan-Schein are the same gloves subject to this suit.  Consequently, the face of these factual allegations show that it may be possible to hold Sullivan-Schein liable for any infringement of the '616 patent that results.  Whether Sullivan-Schein could ultimately prove to be insulated from any liability with respect to its asset acquisition, or its relationship to the

defendants in this matter, is more properly a subject addressed in a summary judgment motion; that question is not before the court at this time.   Instead, in considering the plaintiff's motion to amend, this court looks only at the allegations and whether there is reason to deny leave to amend.   This court concludes there is not.   Fairness and justice require it, so leave is granted.

Nevertheless, the fact that Sullivan-Schein now is responsible for distributing at least some of the gloves formerly distributed by the defendants themselves does not necessarily mean that Sullivan-Schein is properly added as a defendant for all of the glove products that it distributes.   This court has already concluded that the plaintiff's infringement contentions may be supplemented but only with respect to the gloves that have been distributed by the defendants.   Similarly, this court concludes that Sullivan-Schein and Henry Schein, Inc. are properly made parties to this suit but only with respect to their distribution of gloves that used to be distributed by the defendants.   Any gloves distributed by Sullivan-Schein that have no relation to Darby or Island Dental are not properly subject to this suit and, accordingly, Sullivan-Schein's liability in this matter will not include those unrelated products.

**MOTION TO COMPEL**

The defendants move this court to compel discovery of the plaintiff's test data upon which it bases its patent infringement claims against Darby [Defs.' Mot. to Compel, Doc. No. 207.]  The plaintiff asserts that its test data is not discoverable under the "work-product" doctrine.

The overall purpose of the work-product privilege is to protect an attorney's thoughts, mental impressions, opinions, and strategies.  Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511 (1947).  The plaintiff asserts that because its test was done in anticipation of litigation, the test is privileged information under the work product rule.  The defendants argue that they have the right to know the basis for the infringement claims against them.

The court notes that the specific test data at issue is not a compilation of the plaintiff's attorney's thoughts or mental impressions, and nor is it evidence of any strategic decision. Instead, Tillotson's attorneys merely ordered a test to be conducted on the gloves distributed by Darby to ascertain facts, based on which the plaintiff would determine whether to proceed with infringement claims against Darby.  Accordingly, the test itself is not subject to absolute immunity from disclosure.  See

23

Bd. Of Trs. of Leland Standford Junior Univ. v. Coulter  Corp., 118
F.R.D. 532, 533 (S.D. Fla. 1987).  Therefore, the test data may be
produced if the party seeking discovery has a substantial need for
the materials and cannot obtain the substantial equivalent without
undue hardship.  FED. R. CIV. P. 26(b)(3).

The defendants argue, among other things, that it would be
unfair to prevent them from learning of the factual basis
supporting the plaintiff's infringement claims.   The plaintiff
counters by asserting that the defendants could perform their own
test and thereby have the same information as the plaintiffs.
However, even if the defendants were to conduct their own test,
they would still not necessarily have the substantial equivalent of
the plaintiff's data.

The question is not whether the defendants could conduct their
own test and determine whether their gloves infringe the '616
patent.   Rather, the question is whether the plaintiff's test
supports Darby's infringement claims.   To the extent that the
plaintiff relies on that test data to support its infringement
claims, fairness dictates that the defendants have access to that
information in order to defend the claims made against them.  If,
for example, the defendants did conduct their own test in the
manner advocated by the plaintiff, but then concluded that no facts

24

existed to support an infringement claim, the parties would be in
the exact same position as they are now and this case would then
presumably proceed with neither party understanding the basis for
the other party's contentions.  That is unfair and patently counter
to the principles of discovery.  See O2 Micro Intern. Ltd., 467
F.3d at 1365.  Consequently, this court concludes that the
defendants have shown a substantial need for the plaintiff's test
data.

However, recognizing that the information was prepared in
anticipation of litigation, this court will not require the
plaintiff to disclose the test data unless it relies on that
information to support its infringement claims or will use that
information in the future.  Thus, to the extent that the test data
supports any of the plaintiff's contentions, it must disclose that
information now.[2]  To afford the plaintiff an opportunity to decide
whether to disclose the test results based on these parameters, it
will have ten days from the docketing of this order to file a
report informing this court of its decision.  If the plaintiff

---

[2]The court notes that Darby has apparently refused to disclose
similar information at the request of the plaintiff.  Although that
issue is not before the court here, the defendants are hereby put
on notice that this court's decision to require disclosure of
factual information relied upon in making the plaintiff's claims
applies equally to any information relied upon to defend those
claims.

elects to disclose the test results because its claims are based on the test or because it foresees relying on the test at some point in the future, it must do so not later than ten days after filing its report.  Therefore, the defendants' motion will be denied.  If the plaintiff fails to file a report or otherwise comply with this order, the court will impose sanctions by requiring full disclosure of the test results.  Also,if the plaintiff declines to disclose the test results at this time, but later attempts to rely on that information, this court will not allow such evidence.

**CONCLUSION**

For the foregoing reasons, the defendants' Motion for Stay [Doc. No. 203] is DENIED; the defendants' Motion to Exclude Plaintiff's First Supplemental Infringement Contentions [Doc. No. 205], and the plaintiff's Motion for Leave to File Third Amended Complaint [Doc. No. 215], are GRANTED in part and DENIED in part; and the defendants' Motion to Compel [Doc. No. 207] is DENIED.

The plaintiff may supplement its infringement contentions and add Sullivan-Schein and Henry Schein, Inc. as defendants, but only to the extent that such supplemental contentions and claims against Sullivan-Schein and Henry Schein, Inc. relate to glove products that have been distributed by either of the defendants.  With respect to the plaintiff's duty to disclose its test results, it

must do so if it relies on that information to support its infringement claims or will use that information in the future. The plaintiff will have ten days after the docketing of this order to file a report informing this court of its decision as to whether it will disclose the test results.  If it so chooses, the plaintiff will have ten days thereafter to disclose its test results to the defendants.  Failure to comply with this court's order, will result in mandatory disclosure; and, a later attempt to rely on such information after declining disclosure will not be allowed.

The Motion for Joinder in the Defendants' Motion for Stay [Doc. No. 210] by third-party defendant Ansell Healthcare Products, LLC is GRANTED.

SO ORDERED, this *30*$^{TH}$ day of April, 2007.

ROBERT L. VINING, JR.
Senior United States District Judge